Case: 4:26−cv−11873
Assigned To : Behm, F. Kay
Referral Judge: Grand, David R.
Assign. Date : 6/5/2026
Description: CMP HENDRIX V.
CRAIG FRAMES, LLC (NA)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**BAY CITY DIVISION**

| | | |
|---|---|---|
| **Katie R. Hendrix,** | ) | **Case No.** _____ |
| **Plaintiff,** | ) | |
| | ) | **Hon.** _____ |
| **v.** | ) | |
| | ) | **Jury Trial**   ☐ **Yes   No** ☐ |
| **Craig Frames, LLC,** | ) | *Check One* |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiff Katie R. Hendrix, proceeding pro se, for her Complaint against Defendant Craig Frames, LLC, alleges as follows:

**I. PARTIES**

1. Plaintiff Katie R. Hendrix is an adult individual who currently resides in Duluth, Georgia. During the events giving rise to this action, Plaintiff worked for Defendant in Ithaca, Michigan and performed duties for Defendant's Michigan operations.

2. Defendant Craig Frames, LLC is a Delaware limited liability company doing business in Michigan, with its principal office at 140 Industrial Parkway, Ithaca, Michigan 48847. Defendant may be served through an officer, managing agent, or other authorized agent at that address.

**II. JURISDICTION AND VENUE**

3. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981. Plaintiff also brings related claims under Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37.2101 et seq., pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the action arises under the laws of the United States, and under 28 U.S.C. § 1367 as to related state-law claims.

5. Venue is proper in this District under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in Michigan,

1

Defendant's principal place of business is in Ithaca, Michigan, and the relevant employment records and decisionmakers are located in this District.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), assigned Charge No. 471-2026-00551.

7. On March 10, 2026, the EEOC issued a Dismissal and Notice of Rights. A true copy of that Notice is attached hereto as **Exhibit 1.**

8. This action is filed within ninety (90) days of Plaintiff's receipt of the Dismissal and Notice of Rights.

## IV. FACTUAL ALLEGATIONS

9. Defendant hired Plaintiff effective November 4, 2024, as Sales Operations Manager at an annual base salary of $85,000, with eligibility for a discretionary annual bonus. Employment Agreement dated October 28, 2024, including compensation, termination, and notice provision is attached as **Exhibit 2**

10. Although the written agreement contains inconsistent role terminology, Plaintiff was employed and held out by Defendant as Sales Operations Manager, and she performed that role in practice.

11. During Plaintiff's employment, Defendant expanded Plaintiff's responsibilities well beyond ordinary sales-operations oversight. In or about May 2025, Defendant directed Plaintiff to assume responsibility for Customer Support Manager duties during another manager's leave and to maintain oversight of both Sales and Support functions.

12. Plaintiff also served as Defendant's principal or sole HubSpot systems lead for sales-operations implementation work, while continuing to manage sales operations and customer-support responsibilities. Emails and documents reflecting Plaintiff's expanded duties, including Customer Support Manager responsibilities and operational leadership assignments is attached as **Exhibit 3**

13. Despite these expanded duties, Plaintiff's compensation remained unchanged. Plaintiff requested review of her compensation and sought equitable treatment for the scope of work she was performing, but her requests were delayed, dismissed, or not meaningfully addressed.

14. At the same time, Defendant approved salary increases and favorable compensation changes for white male colleagues and/or subordinates. Among other examples, Defendant approved a raise for Trevor Allen, a white male sales representative who

2

reported to Plaintiff, increasing his salary to $65,000 and authorizing a $5,000 catch-up bonus, while Plaintiff's own compensation concerns remained unresolved.

15. Defendant also approved a salary increase for Ryan Graham, a sales representative and tasked Plaintiff with implementing and communicating the revised commission and compensation structure to the team, further demonstrating that Plaintiff was expected to carry substantial managerial responsibility without comparable recognition or pay equity. Commission and compensation communications reflecting pay changes for Trevor and Ryan and Plaintiff's related implementation responsibilities is attached as **Exhibit 4**

16. Plaintiff's leadership and authority were undermined in practice. In project communications involving cross-functional work, Plaintiff was treated as though her judgment and leadership could be bypassed, discounted, or questioned even where she was the operational lead responsible for implementation and execution. Integration-project emails and related communications reflecting undermining of Plaintiff's authority and project-related conflict is attached as **Exhibit 5**

17. Plaintiff raised concerns about these issues internally, including racial discrimination, gender bias, inequitable pay practices, retaliation, and hostile work conditions. In early September 2025, Plaintiff submitted a formal HR complaint identifying, among other things, unequal treatment, denial of fair compensation review, harmful stereotyping, and the erosion of her authority as a Black woman in leadership. Plaintiff's formal HR complaint concerning race discrimination, gender bias, inequitable pay, retaliation, and hostile work environment is attached as **Exhibit 6**.

18. Plaintiff's complaint also described demeaning and exploitative treatment by leadership, including comments trivializing Plaintiff's role while simultaneously acknowledging Defendant's reliance on her labor and specialized knowledge.

19. Shortly after Plaintiff complained internally, Defendant escalated pressure on Plaintiff. Defendant issued a highly aggressive written recovery-demand email requiring a written recovery plan, weekly performance reporting, and specified revenue and quote targets, while warning that failure to achieve improvement by the end of the month would result in a formal performance improvement plan. September 3, 2025 recovery-plan and support emails, including threat of formal PIP and performance-related escalation is attached as **Exhibit 7**

20. The timing and tone of that directive, coming in close proximity to Plaintiff's protected complaint, were materially adverse and reasonably likely to deter protected activity.

21. On September 10, 2025, Ryan Lidolph, acting for or on behalf of Defendant, sent Plaintiff a time-sensitive communication demanding that she immediately reengage in work on a mission-critical SOP project and threatening that if she did not confirm

compliance within twenty-four hours, Defendant would treat her conduct as a resignation. September 10, 2025 time-sensitive communication from Ryan Lidolph and Plaintiff's written response is attached as **Exhibit 8**

22. Plaintiff responded that she was not refusing to perform her job generally, but that she was seeking to avoid direct participation in a project intertwined with the persons and subjects involved in her formal complaint until neutral guidance was provided. Plaintiff expressly stated that construing her position as a refusal to cooperate or a resignation would be inaccurate and procedurally improper.

23. September 11, 2025, Defendant nevertheless placed Plaintiff on unpaid leave effective immediately, pending completion of the investigation. Defendant prohibited Plaintiff from working absent express written authorization and suspended her access to company systems. September 11, 2025 unpaid-leave notice and related correspondence is attached as **Exhibit 9**

24. The unpaid leave was imposed after Plaintiff engaged in protected activity and without a neutral, non-retaliatory basis sufficient to justify removing her from paid work while the company continued its operations.

25. On October 9, 2025, outside counsel for Defendant sent Plaintiff a summary of investigation findings stating that Defendant found no support for Plaintiff's discrimination, retaliation, hostile environment, pay, sabotage, or advancement complaints. October 9, 2025 investigation findings summary and related follow-up correspondence is attached as **Exhibit 10**

26. Plaintiff disputed those findings and requested the underlying materials considered in the investigation. Plaintiff, through counsel, also objected to Defendant's continued maintenance of her on unpaid status without a formal and lawful resolution of her employment status.

27. Defendant then shifted its position from investigation to forced separation. Defendant asserted that Plaintiff's pursuit of severance, her request for fair resolution, and her protected communications showed that she lacked intent to return to work. Defendant also raised Plaintiff's outside role with Not the Dot as a supposed employment-agreement violation and used that issue as additional leverage against Plaintiff. Settlement, separation, and resignation-related correspondence, including the company's assertion that Plaintiff voluntarily resigned effective November 3, 2025 are attached as **Exhibit 11**

28. Ultimately, Defendant treated Plaintiff as having resigned and accepted that supposed resignation effective November 3, 2025, even though Plaintiff had not resigned and had expressly disputed any attempt to characterize her conduct that way. There is no proof that the Plaintiff at any time resigned from her position with the Defendant.

4

29. Defendant's actions caused Plaintiff to lose wages, benefits, employment, professional standing, and future career opportunities, and caused emotional distress, humiliation, and other consequential harm.

30. In a later unemployment appeal, a Georgia Department of Labor administrative hearing officer found that Defendant had not carried its burden to show disqualifying misconduct, found that Plaintiff had been separated for unknown reasons, and allowed unemployment benefits. That ruling further undermines Defendant's post hoc effort to characterize Plaintiff's separation as a voluntary resignation or misconduct-based separation. Georgia Department of Labor Appeal Tribunal decision reversing the prior disqualification and allowing unemployment benefits. A certified copy of this ruling is attached as **Exhibit 12.**

## V. FIRST CAUSE OF ACTION – RACE DISCRIMINATION (TITLE VII, 42 U.S.C. § 1981, AND ELCRA)

31. Plaintiff repeats and realleges Paragraphs 1 through 30 as if fully set forth herein.

32. Plaintiff is African American and is a member of a protected class.

33. Defendant subjected Plaintiff to unequal terms, conditions, and privileges of employment because of race, including by undervaluing her work, undermining her authority, denying fair compensation review and opportunities, treating complaints against her through the lens of harmful stereotypes, and affording more favorable treatment to white male comparators.

34. Defendant's conduct constituted unlawful race discrimination in violation of Title VII, 42 U.S.C. § 1981, and the Elliott-Larsen Civil Rights Act.

## VI. SECOND CAUSE OF ACTION – SEX DISCRIMINATION / DISCRIMINATORY COMPENSATION (TITLE VII AND ELCRA)

35. Plaintiff repeats and realleges Paragraphs 1 through 34 as if fully set forth herein.

36. Plaintiff is female and is a member of a protected class.

37. Defendant treated Plaintiff less favorably than male employees in compensation, support, and workplace authority, notwithstanding Plaintiff's expanded duties and leadership responsibilities.

38. Defendant's conduct constituted unlawful sex discrimination and discriminatory compensation in violation of Title VII and the Elliott-Larsen Civil Rights Act.

## VII. THIRD CAUSE OF ACTION – RETALIATION (TITLE VII, 42 U.S.C. § 1981, AND ELCRA)

39. Plaintiff repeats and realleges Paragraphs 1 through 38 as if fully set forth herein.

40. Plaintiff engaged in protected activity by complaining internally about racial discrimination, gender bias, inequitable pay, and hostile work conditions, and by pursuing administrative remedies through the EEOC.

41. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including heightened scrutiny, the September 2025 recovery-demand and PIP threat, the September 10 ultimatum, unpaid suspension/leave, continued maintenance of Plaintiff in unpaid status, efforts to force separation, and the ultimate termination or forced separation of Plaintiff's employment.

42. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions.

43. Defendant's conduct constituted unlawful retaliation in violation of Title VII, 42 U.S.C. § 1981, and the Elliott-Larsen Civil Rights Act.

## VIII. FOURTH CAUSE OF ACTION – HOSTILE WORK ENVIRONMENT (TITLE VII, 42 U.S.C. § 1981, AND ELCRA)

44. Plaintiff repeats and realleges Paragraphs 1 through 43 as if fully set forth herein.

45. Plaintiff was subjected to unwelcome conduct based on race and sex, including demeaning treatment, stereotyping, undermining of her authority, disparate treatment in workplace support and compensation, and a pattern of conduct that made it more difficult for her to perform and lead effectively.

46. The conduct described above, considered individually and collectively, was severe and/or pervasive enough to alter the terms and conditions of Plaintiff's employment and create an abusive or hostile working environment.

47. Defendant knew or should have known of the hostile environment and failed to take prompt and effective remedial action.

48. Defendant's conduct constituted unlawful hostile-work-environment discrimination in violation of Title VII, 42 U.S.C. § 1981, and the Elliott-Larsen Civil Rights Act.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award the following relief:

   A.  A declaration that Defendant violated Title VII, 42 U.S.C. § 1981, and the Elliott-Larsen Civil Rights Act;

   B.  Back pay, front pay, lost benefits, lost compensation, and all other economic damages allowed by law;

   C.  Compensatory damages for emotional distress, humiliation, mental anguish, and reputational harm;

   D.  Punitive damages to the extent allowed by law;

   E.  Reinstatement or, in the alternative, front pay in lieu of reinstatement;

   F.  Prejudgment interest, post-judgment interest, costs, and any other relief the Court deems just and proper; and

   G.  Any further legal or equitable relief to which Plaintiff may be entitled.

## X. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**Katie R. Hendrix**

8210 Woodiron Drive
Duluth, GA 30097
Email: katie_hendrix@yahoo.com
Pro Se Plaintiff
Date: __June 5_____, 2026

7

## JS-44 CIVIL COVER SHEET INFORMATION

This document is a drafting aid to help complete the official JS-44 Civil Cover Sheet for filing.

**Plaintiff: Katie R. Hendrix; 8210 Woodiron Drive; Duluth, GA 30097; katie_hendrix@yahoo.com**

**Defendant:** Craig Frames, LLC; 140 Industrial Parkway; Ithaca, Michigan 48847

**County of Residence of First Listed Plaintiff:** Gwinnett County, Georgia

**County of Residence of First Listed Defendant:** Gratiot County, Michigan

**Basis of Jurisdiction:** Federal Question

**Nature of Suit:** 442 Civil Rights: Employment

**Cause of Action:** Title VII, 42 U.S.C. § 1981, and supplemental Elliott-Larsen Civil Rights Act claims

**Origin:** Original Proceeding

**Requested Relief:** Back pay, front pay, compensatory damages, punitive damages where allowed, reinstatement or front pay, costs, declaratory and equitable relief

**Jury Demand:** Yes

**Division/Place of Holding Court:** Bay City Division / Eastern District of Michigan

**Right-to-Sue Attachment:** EEOC Dismissal and Notice of Rights dated March 10, 2026

1